UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE FIRE & CASUALTY INSURANCE
COMPANY, AND
ALLSTATE PROPERTY & CASUALTY           Docket No.:
INSURANCE COMPANY,                     21-cv-03970 (BMC)
                        Plaintiffs,

        v.

EPIONE MEDICAL, P.C., et al.
                        Defendants.
───────────────────────────────

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
# RUSLAN NEKTALOV'S MOTION TO DISMISS

Nicholas Bowers, Esq.
Gary Tsirelman, P.C.
129 Livingston Street
2nd and 3rd Floors
Brooklyn, NY  11201
(718) 438-1200

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

TABLE OF AUTHORITIES ............................................................................................................iii

INTRODUCTION AND BACKGROUND ...................................................................................... 1

ARGUMENT ..................................................................................................................................... 2

   I.  This Court Should Dismiss The RICO and Common Law Fraud Causes of Action Against Ruslan Nektalov ................................................................................**Error! Bookmark not defined.**

      A.   Legal Standard for Motions to Dismiss ............................................................................ 2

      B.   Legal Standard for RICO Claims ..................................................................................... 3

   II.  This Court Should Dismiss Plaintiffs' RICO and Common Law Fraud Claims Against Nektalov ............................................................................................................................... 6

      A.   Plaintiffs Do Not Allege Specific Conduct to Nektalov ................................................... 6

      B.   Plaintiffs Fail to State a Claim For RICO Conspiracy Against Nektalov ....................... 10

   III.  This Court Should Dismiss Plaintiffs' Unjust Enrichment Claims Against Nektalov . 11

CONCLUSION ............................................................................................................................**12**

TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 1007, at *35 (E.D.N.Y. Jan. 4, 2017) ............................................................................ 5, 10

*AIU Ins. Co. v. Olmecs Med. Supply Co., Inc.*,
No. 04-cv-2934, 2005 U.S. Dist. LEXIS 29666, at *34 (E.D.N.Y. Feb. 22, 2005) ..................... 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ................................................................................ 2

*Basich v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) ................................................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) ............................................................... 2

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) .................................... 4, 9

*Choi v. 37 Parsons Realty LLC*, 444 F. Supp. 3d 411, 420 (E.D.N.Y. 2020) ............................. 9

*Cofacredit. S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) ............... 5

*Congregacion de la Mision Provincia de Venezuela v. Curi*,
978 F. Supp 435, 451 (E.D.N.Y. 1997) ................................................................................... 10

*Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 133 (E.D.N.Y. 2010) .......................................... 5

*Davis v. Yeroushalmi*, 985 F. Supp. 2d 349, 362 (E.D.N.Y. 2013) .......................................... 11

*DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ................................................................ 4

*DLJ Mortg. Capital, Inc., v. Kontogiannis*, 726 F. Supp 2d, 225, 236 (E.D.N.Y. 2010) ............ 3

*Eagle One Roofing Contractors, Inc. v. Acquafredda,* 2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) ........................................................................................................................................ 8

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp2d 362, 377 (E.D.N.Y. 2002) ........... 6

*Filler v. Hanvit Bank*, 2003 U.S. Dist. LEXIS 15950, at *8 (S.D.N.Y. Sep. 12, 2003) ............... 3

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004) ............ 4, 5

*Franzone v. City of N.Y.*, No. 13-cv-5282 (NG),

2015 U.S. Dist. LEXIS 58199, at *24 (E.D.N.Y. May 1, 2015) .................................................. 6

*Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2nd Cir. 2001) ................................ 11

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ......................... 5, 10

*Hoyle v. Dimond*, 612 F. Supp. 2d 225, 233 (W.D.N.Y. 2009) ............................................... 11

*In re Sumitomo Copper*, 995 F. Supp. 328, 456 (S.D.N.Y. 2000) ............................................ 6

*Innovative Custom Brands, Inc. v. Minor*, 2016 WL 308805, at *4 (S.D.N.Y. Jan. 25, 2016) ... 11

*Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) ....................... 3

*Lake Minnewaska Mountain Houses Inc. v. Rekis*,

259 A.D.2d 797, 686 N.Y.S. 2d 186 (3rd Dept. 1999) ............................................................ 11

*Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp 986, 1001 (E.D.N.Y. 1995) ..................... 4

*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991) .................................................. 3

*Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) ............................................... 3

*Purgess v. Sharrock*, 806 F.Supp. 1102 (S.D.N.Y.1992) .......................................................... 6

*Renner v. Chase Manhattan Bank*,

2000 U.S. Dist. LEXIS 8552, at *15 (S.D.N.Y. June 14, 2000) ................................................. 3

*Reves v. Ernst& Young*, 507 U.S. 170, 179 (1993) .................................................................. 4

*Rombach v. Chang*, 355 F. 3d 164, 170 (2d Cir. 2004) ........................................................... 2

*Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985) ........................................................ 4

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,

17 F.Supp.3d 207, 230 (E.D.N.Y. 2014) ................................................................................ 4, 6

*Spiteri v. Russo*, 12 CV 2780, 2013 WL 4806960, at *4 (E.D.N.Y. Sept 7, 2013) ...................... 3

*Sykes v. Mel Harris & Assocs.*, 757 F. Supp. 2d 413, 427 (S.D.N.Y. 2010) ............................... 4

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F. Supp 2d 432, 453 (S.D.N.Y. 2004) .... 8

*United States v. Turkette*, 452 U.S. 576, 583 (1981)............................................................. 5

*Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dept. 1998). ................ 11

**Rules**

Federal Rule of Civil Procedure 12(b)(6).......................................................................... 1, 2

Federal Rule of Civil Procedure 9(b).......................................................................... passim

Fed Rule of Civil Procedure 8(a)(2) ................................................................................... 2

INTRODUCTION AND BACKGROUND

Defendant Ruslan Nektalov submits this memorandum of law in support of his motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for its failure to state a claim and conform to the requirements of Federal Rule of Civil Procedure 9(b).

Plaintiffs allege that Nektalov participated in, or conspired to participate in, a scheme to defraud Plaintiff insurance companies alongside Defendants Simon Davydov and Dr. Michael Y. Jacobi, D.O., through the submission of claims for allegedly medically unnecessary medications, included compounded medications. Plaintiffs allege the Davydov and other laypersons[1] controlled medical clinics that treated patients injured in automobile accidents and submitted bills for treatment to Plaintiffs under New York No-Fault Automobile insurance laws and regulations. Plaintiffs allege that Davydov and Dr. Jacobi channeled prescriptions written according to a pre-determined protocol to Defendant Wellmart Rx, Inc., a pharmacy co-owned by Nektalov and Davydov, which then filled those prescriptions and sent bills to Plaintiffs for the medications dispensed to Plaintiffs' insureds.

Plaintiffs' voluminous, repetitive, inconsistent, and conclusory allegations against Nektalov fail to state a claim because they are insufficiently specific as to Nektalov's alleged role in the scheme and fail to make any allegations against Nektalov in particular. These deficiencies, as well as other set forth below, require that the Complaint be dismissed as to Nektalov in its entirety.

---

[1] The so-called "Manager Defendants include Davydov, Emanuel David, Stella Raytsin, and Elena Mumin-Akhunov, collectively the "Manager Defendants."

1

ARGUMENT

**I. Legal Standards**

    A. Legal Standard for Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) requires Plaintiffs to set forth factual allegations that are sufficient to support a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). A claim is plausible when the facts alleged by the plaintiff that permit a reasonable inference the defendant is liable for the alleged conduct, though such an inference must be more than that the defendant possibly acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Crucially, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of [the alleged] misconduct, the complaint has alleged--but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed R. Civ. P. 8(a)(2)). A plaintiff must substantiate its allegations with specific pleadings of fact; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to withstand a motion to dismiss. Iqbal, 556 U.S. at 678. Furthermore, conclusory allegations are not entitled to be assumed true for the purposes of a motion brought under Federal Rule 12(b)(6). Id. at 681.

Additionally, Federal Rule of Civil Procedure 9(b) provides that "[in] all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity," excluding conditions of the mind such as intent, malice, or knowledge. To satisfy this standard, a plaintiff must plead specific facts that "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F. 3d 164, 170 (2d Cir. 2004). This standard additionally applies to claims of conspiracy to commit fraud and state claims

for aiding and abetting fraud. *Filler v. Hanvit Bank*, 2003 U.S. Dist. LEXIS 15950, at *8 (S.D.N.Y. Sep. 12, 2003); *see also Renner v. Chase Manhattan Bank*, 2000 U.S. Dist. LEXIS 8552, at *15 (S.D.N.Y. June 14, 2000). In the RICO context, "Rule 9(b)calls for the complaint to 'specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992)). Here, Plaintiffs' allegations sounding in fraud, aiding and abetting fraud, and the RICO Act against Ruslan Nektalov rely on conclusory assertions and fail to meet the pleading requirements of the RICO Act and the particularity requirements of Rule 9(b) and must therefore be dismissed.

B. Legal Standard for RICO Claims

Courts in this Circuit have long recognized that the civil RICO statute is "an unusually potent weapon – the litigation equivalent of a thermonuclear device: because "the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)(citing *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991); *see also DLJ Mortg. Capital, Inc., v. Kontogiannis*, 726 F. Supp 2d, 225, 236 (E.D.N.Y. 2010) ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding the federal courts by dressing up run-of-the-mill fraud claims as RICO violations.") *and Spiteri v. Russo*, 12 CV 2780, 2013 WL 4806960, at *4 (E.D.N.Y. Sept 7, 2013)("Courts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies.") Courts have thus warned that RICO claims "must be reviewed with appreciation of the extreme sanctions [the RICO statute] provides, so that actions traditionally

brought in state courts do not gain access to treble damages and attorneys' fees in federal court simply because they are cast in terms of RICO violations." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp 986, 1001 (E.D.N.Y. 1995).

The elements of a civil RICO claim are (1) a violation of 18 § U.S.C. 1962; (2) injury to plaintiff's business or property; and (3) that the violation caused the injury. *Sky Medical Supply, Inc., v. Support Claims Services, Inc.*, 17 F.Supp3d 207, 222 (2014). To establish liability for violations of 18 U.S.C. § 1962(c), Plaintiffs must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, *S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). A RICO enterprise includes any person, corporation, or other legal entity and any group of individuals associated in fact though not a legal entity. 18 U.S.C. § 1961(4). The Supreme Court has held that a party is not liable under the RICO act unless that party"participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst& Young*, 507 U.S. 170, 179 (1993).

Plaintiffs must specify that that Defendants "conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (quoting *Reves*, 507 U.S. at 185). The conduct must be more than simply taking orders or fulfilling their job duties; "the RICO defendant [must be alleged to] have played '*some* part in directing [the enterprise's] affairs.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004)(quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)(emphasis in original). Failure to plead that a defendant did not direct or control the enterprise and was instead only associated with the enterprise warrants dismissal. *Sykes v. Mel Harris & Assocs.*, 757 F. Supp. 2d 413, 427 (S.D.N.Y. 2010). That is, "[t]he requirement of section 1962(c) must be established as to each individual defendant." *DeFalco*, 244 F.3d at 306.

The Supreme Court has clarified that a RICO enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," which plaintiffs must establish "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Conclusory assertions that individuals are associated as a RICO enterprise are insufficient. *See First Capital Asset Mgmt.*, 244 F.3d at 175. ("[C]onclusory naming of a string of entities does not adequately allege an enterprise"). Courts in this Circuit also recognize that RICO claims must be "with respect to each defendant individually." *Id*. at 181 (2d Cir. 2004).

To plead the existence of a conspiracy under 18 U.S.C. 1962(d), "a plaintiff must establish that the defendants 'agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise.'" *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 133 (E.D.N.Y. 2010) (quoting *Cofacredit. S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). This requires that the plaintiff allege that the defendant "knew about and agreed to facilitate the scheme." *Basich v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003). A plaintiff must therefore make specific, non-conclusory allegations as to the nature and terms of any agreement between the alleged conspirators. *See, e.g.*, *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."); *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 1007, at *35 (E.D.N.Y. Jan. 4, 2017) (dismissing a RICO conspiracy claim because plaintiffs only made conclusory allegations as to the defendants' agreement to conspire to violate the RICO Act). A RICO conspiracy claim "should be more than a conclusory add-on at the end of a complaint." *Sky*

*Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F.Supp.3d 203, 230 (E.D.N.Y. 2014) (quoting *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp2d 362, 377 (E.D.N.Y. 2002)).

## II. This Court Should Dismiss Plaintiffs' RICO and Common Law Fraud Claims Against Nektalov

For the reasons discussed below, this Court should dismiss all of Plaintiffs' RICO and RICO conspiracy claims against Ruslan Nektalov. *See Purgess v. Sharrock*, 806 F.Supp. 1102, 1110, n. 9 (S.D.N.Y.1992) ("Dismissal of plaintiff's substantive RICO claim . . . mandates dismissal of the conspiracy to commit RICO claim . . . as well."). These consist of Counts V and VI.

### A. Plaintiffs Do Not Allege Specific Conduct to Nektalov

#### 1. Plaintiffs Make Unclear Group Allegations Against Nektalov

Plaintiffs' allegations that Nektalov participated in the conduct of the alleged Wellmart Enterprise based solely on his part ownership of Wellmart rather than any actions he took to further the enterprise. Plaintiffs cannot simply group Defendants together to avoid making individual, particularized allegations about their respective roles in the enterprise. *See Franzone v. City of N.Y.*, No. 13-cv-5282 (NG), 2015 U.S. Dist. LEXIS 58199, at *24 (E.D.N.Y. May 1, 2015). Furthermore, Rule 9(b) requires "adequate particularity in the body of the complaint [as to] the specific circumstances constituting the overall fraudulent scheme." *AIU Ins. Co. v. Olmecs Med. Supply Co., Inc.,* No. 04-cv-2934, 2005 U.S. Dist. LEXIS 29666, at *34 (E.D.N.Y. Feb. 22, 2005) (quoting *In re Sumitomo Copper*, 995 F. Supp. 328, 456 (S.D.N.Y. 2000)).

Plaintiffs hide their failure to plead any substantive participation in the alleged enterprise on Nektalov's behalf by grouping him with Simon Davydov in every substantive allegation against

Nektalov. Plaintiffs allege throughout the Complaint that Davydov and the Manager Defendants control the Healthcare Provider Defendants and the P.C. Defendants. *See, e.g.*, Compl. ¶¶12-15, 53, 58, 65-67, 77-79, 222, 254, 257, and 275-351, *inter alia*. Plaintiffs also allege that Davydov specifically had a relationship with the Healthcare Provider Defendants and directed them to, among other things, direct medically unnecessary prescriptions to Wellmart. *Id*. ¶¶374, 668, and 669. Nowhere do Plaintiffs allege that Nektalov had any independent control or influence over the prescriptions allegedly sent to Wellmart and Wellmart's billing for medications dispensed according to those prescriptions. Indeed, the only allegations Plaintiffs make specifically against Nektalov are those in paragraphs 126 through 133, of which the first three merely allege that Nektalov lives in New York, owns Wellmart, and is the Vice President and Secretary of Wellmart. The remaining paragraphs are conclusory allegations that Nektalov "controlled the day-to-day operations of Wellmart," that Nektalov was "involved in channeling prescriptions to Wellmart," and that he participated in the operation and management of the Wellmart Enterprise. *Id*. ¶¶129-33. After this short, insubstantial section, the Plaintiffs only make a single individualized allegation against Nektalov, reiterating that Nektalov ran the day-to-day operations of Wellmart. *Id*. ¶375 Plaintiffs instead group their allegations against him with those against Davydov and other Defendants. *See, e.g., Id*. ¶¶216, 373, 464, 1281, 1297, 1302, and 1306. Plaintiffs' grouping of Nektalov and Davydov regarding the alleged predicate acts related to the alleged Wellmart Enterprise obfuscate Nektalov's involvement, or lack thereof, in the alleged enterprise.

The Complaint is thus unclear as to what extent Davydov or Nektalov undertook each alleged action. It appears as if Plaintiffs make certain allegations against Nektalov and Davydov as a group that the Plaintiffs make clear elsewhere only apply to Davydov. Plaintiffs allege that Davydov and the other Manager Defendants, not Nektalov, controlled the PC Defendants. *Id*.

7

¶¶316, and 350, *inter alia*. Plaintiffs also allege that Davydov alone required that Epione Medical, P.C. send prescriptions to Wellmart. *Id*. ¶¶313, 314. Plaintiffs also admit that Davydov and not Nektalov had a relationship with the prescribing physicians and Dr. Jacobi in particular. *Id*. ¶¶373, 374. Nevertheless, Plaintiffs group Davydov and Nektalov together in their conclusory allegations regarding collusive relationships with the prescribing doctors and the alleged predicate acts of mail fraud. *Id.* ¶¶423 and 1297-1302. Plaintiffs' more substantial allegations against Davydov give no support to and further undercut the conclusory assertions as to Nektalov's alleged involvement in the alleged enterprise.

Plaintiffs further obfuscate the parties' alleged roles in the alleged Wellmart Enterprise by grouping the Davydov and Nektalov together regarding the commission of the predicate acts. *Id.* ¶¶1297-1302. Plaintiffs recite that Davydov and Nektalov either mailed or caused to be mailed bills and medical records without ever specifying whether Nektalov or Davydov was responsible for any alleged predicate act. In fact, the Complaint is never clear as to who oversaw the mailing of bills and medical records from Wellmart to Plaintiffs.

Courts dismiss RICO and fraud allegations that are based on allegations against groups because the resulting lack of clarity violates the particularity requirements Rule 9(b). *See Eagle One Roofing Contractors, Inc. v. Acquafredda,* 2018 WL 1701939 (E.D.N.Y. Mar. 31, 2018) (dismissing RICO claims against a defendant who was grouped with other defendants and against whom individual specific facts were not alleged). Plaintiffs have thus failed to allege that Nektalov was a "key participant" who made "critical misrepresentations" or "create[ed] false documents." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.,* 303 F. Supp 2d 432, 453 (S.D.N.Y. 2004). The RICO and fraud claims against Nektalov ought therefore be dismissed.

## 2. Plaintiffs' Allegations Against Nektalov Only Establish That Nektalov Engaged in His Own Affairs as an Owner of Wellmart

Plaintiffs' conclusory allegations against Nektalov only establish that Nektalov engaged in his own affairs and not in the conduct of the alleged Wellmart scheme. As discussed above, Plaintiffs only level conclusory allegations against Nektalov regarding the alleged Wellmart Enterprise beyond his ownership and operation of Wellmart. Nektalov's ownership and operation of Wellmart alone is not enough to overcome the requirement that Plaintiffs must allege Nektalov's participation in the scheme with specificity. Courts distinguish between "conduct of the enterprise's affairs" and engaging in the conduct of one's "own affairs." *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001). A person conducting their own affairs to an allege RICO scheme, cannot be held liable for any RICO violation. *See, e.g.*, *Choi v. 37 Parsons Realty LLC*, 444 F. Supp. 3d 411, 420 (E.D.N.Y. 2020)(finding that a defendant attorney and escrow agent was not liable for RICO when defendant was only engaging in his own affairs as an escrow agent).

Here, Plaintiffs describe Nektalov as the part-owner and manager of Wellmart . Compl. ¶¶5, 375. Even should the Court accept Plaintiffs' conclusory and group pleadings, Nektalov's alleged activities with regards to Wellmart were as a part owner and manager, including overseeing day-to-day operations. *Id*. ¶¶126-131. Plaintiffs' only theory as to Nektalov's liability is that because he was part-owner of Wellmart, he therefore intentionally caused Wellmart to submit false claims to Plaintiffs. *Id*. ¶132. Plaintiffs do not allege any particular agreement or connection to the other alleged members of the Wellmart Enterprise other than that Nektalov co-owned Wellmart with Davydov, nor do Plaintiffs ever allege that Nektalov specifically knew about or otherwise was responsible for the alleged relationship between Davydov and the prescribing physicians Davydov allegedly directed to send prescriptions to Wellmart. Plaintiffs therefore fail to allege

that Nektalov was engaged in anything other than his own affairs as part-owner and manager of Wellmart.

       3. Plaintiffs' Fraud Fraud Claims Also Fail

Plaintiffs' common law causes of action must also comply with Federal Rule of Civil Procedure 9(b) and be pleaded with particularity. *See Arabi v. Javaheria*, No. 13 CV 456 (ERK) (CLP), 2016 U.S. Dist. LEXIS 31947, at *31 (E.D.N.Y. Mar. 9, 2016) (citing *Wight v. Bank of America Corp.*, 219 F.3d 79, 91 (2d. Cir. 2000). Plaintiffs' fraud claims against Nektalov thus fail on the same grounds as do their RICO claims and should therefore be dismissed.

      B. Plaintiffs Fail to State a Claim For RICO Conspiracy Against Nektalov

To adequately plead conspiracy under the RICO Act, a plaintiff must plead that "each defendant by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise. *United States Fire Ins. Co. v. United Limousine Serv.*, 303 F. Supp. 2d 432, 453 (S.D.N.Y. 2004) (citing *Allen v. New World Coffee, Inc.*, 2001 WL 293683, at *8 (S.D.N.Y. Mar. 27, 2001). Plaintiffs' allegations of conspiracy fail even if Nektalov knew of or benefited from the alleged scheme because "'mere knowledge of the scheme, even coupled with personal benefit, is not enough to impose liability for a RICO conspiracy.'" *Abbott Labs v. Adelphia Supply USA*, 2017 WL 57802, at *9 (E.D.N.Y. Jan. 4, 2017) (citing *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp 435, 451 (E.D.N.Y. 1997)). Furthermore, a plaintiff must also make specific, non-conclusory allegations as to the nature and terms of any agreement between the alleged conspirators. *See, e.g., Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.") Plaintiffs must plead specific factual

10

allegations regarding the alleged conspiracy, including the terms of the agreement, the parties to the agreement, when the agreement commenced, and what actions were taken in furtherance of it; "conclusory allegations concerning the conspiracy are insufficient." *Davis v. Yeroushalmi*, 985 F. Supp. 2d 349, 362 (E.D.N.Y. 2013) (quoting *Hoyle v. Dimond*, 612 F. Supp. 2d 225, 233 (W.D.N.Y. 2009)). Here, Plaintiffs do not allege any concrete agreement between Nektalov and the other Defendants regarding the alleged Wellmart Enterprise other than an agreement with Davydov to co-own Wellmart. Plaintiffs therefore fail to allege that Nektalov participated in a RICO conspiracy and those claims against Nektalov ought therefore be dismissed.

### III. This Court Should Dismiss Plaintiffs' Unjust Enrichment Claims Against Nektalov

In order to state a cause of action for unjust enrichment under New York law, a plaintiff must assert that (1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff. *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 519 (2nd Cir. 2001). *See also Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797, 686 N.Y.S. 2d 186 (3rd Dept. 1999) and *Wiener v. Lazard Freres & Co.*, 241 A.D.2d 114, 672 N.Y.S.2d 8 (1st Dept. 1998).

Here, Plaintiffs have made no effort to substantiate the unjust enrichment claim against Nektalov and the cause of action appears to be added as an afterthought. Indeed, the unjust enrichment claim merely reiterates Plaintiffs' RICO and common law fraud allegations. Compl. ¶¶1601-06. Because the unjust enrichment claim is premised on allegedly fraudulent conduct, it is subject to the particularity requirement of Rule 9(b). *See generally Innovative Custom Brands, Inc. v. Minor*, 2016 WL 308805, at *4 (S.D.N.Y. Jan. 25, 2016). The unjust enrichment cause of action against Nektalov therefore fails on the same grounds as the RICO and common law fraud claims.

CONCLUSION

Plaintiffs failed to make any substantive allegations against Nektalov in the Complaint regarding his participation in any scheme to defraud Plaintiffs. Accordingly, the Nektalov's motion to dismiss the Complaint as to him should be granted, together with such further relief as this Court deems proper.

Dated: Brooklyn, NY

October 12, 2021

By: Nicholas Bowers, Esq.

\_\_\_\_\_/s/_____

Gary Tsirelman, P.C.
*Attorneys for Ruslan Nektalov*
129 Livingston Street
2nd and 3rd Floors
Brooklyn, NY 11201
(718) 438-1200